IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**ACNR RESOURCES, INC.,**
**Employer Below, Petitioner**

**FILED**
**February 3, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 25-ICA-270**        (JCN: 2024030152)

**JOSEPH ASTURI,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner ACNR Resources, Inc. ("ACNR") appeals the June 4, 2025, order of the Workers' Compensation Board of Review ("Board"). Respondent Joseph Asturi filed a response.[1] ACNR did not reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order, which rejected the claim and denied temporary total disability ("TTD") benefits.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On July 30, 2024, Mr. Asturi, an underground coal miner, alleges that he and a coworker were walking down an entry ramp, and he stepped in a hole and twisted his knee to the side, causing him to fall to the ground. According to Mr. Asturi, this knee injury was aggravated on September 27, 2024, when he tripped over a screen. Mr. Asturi timely filed a workers' compensation claim.

Prior to the compensable injury in this claim, in 2018, Mr. Asturi suffered an occupational medial meniscal tear in his left knee. On August 27, 2018, Mr. Asturi underwent left knee arthroscopy with partial medial meniscectomy, partial lateral meniscectomy, and chondroplasty performed by Jeffrey Abbott, M.D. Mr. Asturi was seen by Ross Tennant, FNP, on January 22, 2019, for discomfort in the left knee since returning to full duty work on October 29, 2018. Mr. Asturi reported that his symptoms had worsened

---

[1] ACNR is represented by Aimee M. Stern, Esq. Mr. Asturi is represented by J. Thomas Greene, Jr., Esq., and T. Colin Greene, Esq.

1

over the month prior, he had difficulty ambulating on uneven and inclined surfaces, and he had experienced episodes of instability over the past few weeks. The assessment was left knee sprain; medial meniscal tear associated with a large joint effusion; evidence of old Osgood-Schlatter disease with chronic patellar tendonitis; quadriceps tendinopathy; prepatellar bursitis; and exacerbation of chronic left knee pain.

On January 31, 2019, Mr. Asturi followed up with Dr. Abbott. Mr. Asturi reported continued left knee pain, and physical therapy was not improving his symptoms. Dr. Abbott administered three Euflexxa injections to Mr. Asturi's left knee in April of 2019. Mr. Asturi reported that he still had some pain in the left knee but noted relief. On August 26, 2019, Mr. Asturi was seen by David Hess, M.D., for intermittent left knee pain. Dr. Hess noted that the left knee was tender to palpation, especially in the medial aspect, and crepitus with range of motion. However, Dr. Hess found Mr. Asturi's reflexes were intact, and strength and sensation were grossly intact. The assessment was left knee pain. Mr. Asturi was given a Toradol injection and advised to return as needed.

Returning to the compensable injury in this claim, Mr. Asturi was seen by Dr. Abbott on August 15, 2024. Mr. Asturi reported that the previous injections had helped and that the pain "comes and goes." Mr. Asturi indicated that the pain increased with daily activity, and he felt weakness in the knee as if it could buckle; he also stated that he had some difficulty walking as well as clicking and swelling with tightness. X-rays of the left knee revealed mild medial joint space narrowing and subchondral sclerosis. The assessment was an acute medial meniscus tear of the left knee and primary osteoarthritis of the left knee. A left knee MRI was ordered.

On August 29, 2024, Mr. Asturi underwent an MRI of the left knee, revealing degenerative tearing of the medial meniscal body through the posterior horn, a small focal tear at the posterior body of the lateral meniscus, mild tricompartmental cartilage loss, and small joint effusion. Mr. Asturi returned to Dr. Abbott's office on September 3, 2024, and reported no improvement since the last visit. Mr. Asturi stated that the pain was constant and increased with activity, and he also reported stiffness. Dr. Abbott reviewed the August 29, 2024, MRI which he believed showed a medial meniscus tear, a questionable lateral meniscus tear, and mild degenerative changes. The assessment was an acute medial meniscus tear of the left knee, subsequent encounter, and primary osteoarthritis of the left knee. Dr. Abbott recommended left knee arthroscopy.

Dr. Abbott signed a Physical Work Capabilities form dated October 23, 2024, indicating that Mr. Asturi had lifting and carrying restrictions related to the July 30, 2024, and September 27, 2024, falls. Dr. Abbott noted that Mr. Asturi was scheduled for left knee arthroscopy on November 11, 2024.

2

An Employer's Report of Injury form dated October 24, 2024, indicates the date of injury was identified as July 30, 2024, and it was noted that Mr. Asturi stopped work that day and returned to work on August 2, 2024. The injury was identified as a left knee sprain/strain due to a slip, trip and/or fall. The receipt of written notice was October 23, 2024. ACNR indicated that it questioned the injury because Mr. Asturi had previously injured his left knee in 2018. ACNR indicated that it did not offer a modified return to work program.

On October 30, 2024, the claim administrator issued an order rejecting the claim. The claim administrator alleged Mr. Asturi did not report an injury until October 4, 2024, and that the medical records did not mention a workplace injury. Mr. Asturi protested this order.

Dr. Abbott performed left knee arthroscopy with partial medial meniscectomy, partial lateral meniscectomy, excision of medial plica, and chondroplasty on November 11, 2024. The post operative diagnoses were left knee medial meniscus tear; left knee lateral meniscus tear; left knee medial plica; and degenerative joint disease left knee grade 3 involving the medial compartment, grade 2 involving the lateral compartment, and grade 2 involving the patellofemoral compartment.

On February 18, 2025, Mr. Asturi returned to Dr. Abbott's office for an injection for left knee pain. Mr. Asturi reported that the pain was constant and worse when he was bending his knee. Dr. Abbott noted that Mr. Asturi walked with a visible limp and had some swelling. Mr. Asturi stated that he was taking Ibuprofen for the pain with some relief. Mr. Asturi also reported left shoulder pain and swelling. A physical examination of the left knee showed well healed incisions, range of motion from 5 to 120° of flexion, no ligament laxity about the left knee, and tenderness to palpation in the mediolateral joint lines. The assessment was left rotator cuff tear, left shoulder pain, and primary osteoarthritis of the left knee. The injection was administered, and an MRI of the left shoulder was ordered.

Mr. Asturi was deposed on February 19, 2025, and he testified that, on July 30, 2024, as he and a coworker were walking down the entry, his left foot went down in a hole and he twisted his knee as he fell to the ground. Mr. Asturi stated that his knee hurt following the injury, but he did not know how badly it would get over time. Mr. Asturi testified that he did not complete an accident report that day, and he continued working, but his injury worsened day by day. Mr. Asturi stated that he went to see Dr. Abbott on August 15, 2024, because he had performed surgery on his left knee in 2018 following his previous injury. Mr. Asturi stated that after an MRI showed a tear in the meniscus, Dr. Abbott recommended surgery to repair the tear, which was performed in November 2024. Mr. Asturi further testified that he fell again on September 27, 2024, when he tripped over a screen, which made his injury worse. Mr. Asturi testified that he worked until October 26, 2024, and then took off work until he had surgery in November of 2024. Mr. Asturi

3

testified that he was released to return to work on January 8, 2025, however, he took a few sick days after that because his knee was still hurting. Mr. Asturi stated that he had seen Dr. Abbott after the surgery and received a left knee injection, which improved the symptoms.

When asked what type of problems he had when he saw Dr. Abbott on August 15, 2024, Mr. Asturi stated his knee hurt on July 30, 2024, but much less than when he was injured at work in 2018. Mr. Asturi stated that on the day of his 2024 injury, he assumed he was suffering from arthritis pain. Mr. Asturi testified that he never had arthritis before, but after the first surgery, "arthritis gets in there I guess." Mr. Asturi stated that the knee injections he received in 2019 helped the knee pain. Mr. Asturi stated that Dr. Abbott told him that he had arthritis after the 2018 knee injury. Mr. Asturi testified that he was able to return to full duty work after the 2019 injection, and that he kept working without difficulties until the injury on July 30, 2024. Mr. Asturi testified that following the 2024 injury, his pain increased until he suspected something was wrong. Thereafter, he sought treatment from Dr. Abbott. According to Mr. Asturi, he told Dr. Abbott about the injury, and he emphasized that the injury was witnessed by Jason Kinney and Jason Sellers.

On June 4, 2025, the Board reversed the claim administrator's order rejecting the claim and denying TTD benefits. The Board found that Mr. Asturi established that he sustained an acute medial meniscus tear of the left knee as a result of the July 30, 2024, injury. Further, the Board found that Mr. Asturi established that he was temporarily and totally disabled from October 23, 2024, through January 8, 2025. ACNR now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

4

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

ACNR argues that Mr. Asturi failed to timely report his injury to a supervisor. ACNR further argues that the radiologist who read Mr. Asturi's MRI specifically noted it to demonstrate degenerative tearing of the medial meniscal body through the posterior horn. Finally, ACNR argues that, although there are no medical records documenting continued medical treatment for Mr. Asturi's left knee between November 7, 2019, and August 15, 2024, Mr. Asturi's deposition testimony suggests that he had been having continued symptoms since the 2018 left knee surgery.

The Supreme Court of Appeals of West Virginia ("SCAWV") held, in *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016):

A noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable preexisting injury results in a [discrete] new injury, that new injury may be found compensable.

*Id.* at 738, 783 S.E.2d at 858, syl. pt. 3

The SCAWV clarified its position in *Moore v. ICG Tygart Valley, LLC,* 247 W. Va. 292, 879 S.E.2d 779 (2022), holding:

A claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

*Id.* at 294, 879 S.E. 2d at 781, syl. pt. 5

In *Gration v. Contura Energy, Inc*., No. 21-0949, 2023 WL 6127900 (Sept. 19, 2023) (memorandum decision), the SCAWV found that the claimant's requested diagnoses were compensable under *Moore*, despite the claimant having prior symptoms and

treatment, because the claimant had not received treatment or reported symptoms for five years prior to the compensable injury.

Here, the Board found that Mr. Asturi established that he sustained an acute medial meniscus tear of the left knee as a result of an injury occurring on July 30, 2024, in the course of and resulting from his employment. The Board found Mr. Asturi's testimony regarding his injury, reasons for and reasoning for delay in reporting, and the testimony regarding his previous symptoms to be credible. We defer to the Board's credibility determinations.[2] Also, the Board determined that the unrebutted witness statement by Mr. Kinney supported Mr. Asturi's claim for a work related injury. The Board noted that, although Mr. Asturi had a previous injury and received treatment, there is no record of treatment or knee symptoms for over four years prior to the July 30, 2024, injury. Thus, the Board found that Mr. Asturi was entitled to the presumption set forth in *Moore*. Further, the Board found that Mr. Asturi established that he was temporarily and totally disabled from October 23, 2024, through January 8, 2025, and thereafter, as substantiated by proper medical evidence. The Board's determinations were not an abuse of discretion or clearly wrong.

Finally, ACNR argues that the claimant's MRI revealed a degenerative tear that is not work related. However, we note that Dr. Abbott interpreted the same MRI and believed otherwise. He diagnosed an acute tear. Upon review, the Board did not abuse its discretion when it accepted the diagnosis of an acute tear from Dr. Abbott.

To summarize, we conclude that the Board was not clearly wrong in finding that Mr. Asturi established that he sustained an acute medial meniscus tear of the left knee as a result of an injury occurring on July 30, 2024. Further, we conclude that the Board was not clearly wrong in finding that Mr. Asturi established that he was temporarily and totally disabled from October 23, 2024, through January 8, 2025, and thereafter, as substantiated by proper medical evidence. As set forth by the SCAWV, "[t]he 'clearly wrong' and the arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's order, which rejected the claim.

Accordingly, we affirm the Board's June 4, 2025, order.

---

[2] *See Martin v. Randolph Cnty Bd. of Educ.*, 195 W. Va. 297, 306, 465 S.E.2d 399, 408 (1995) ("We cannot overlook the role that credibility places in factual determinations, a matter reserved exclusively for the trier of fact. We must defer to the ALJ's credibility determinations and inferences from the evidence . . . .").

Affirmed.

**ISSUED:** February 3, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White